# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-108

HOMER LANDRY

VERSUS

PETROLEUM HELICOPTERS, INC., ET AL.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 04
PARISH OF LAFAYETTE, NO. 10-02915
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

## SHANNON J. GREMILLION
### JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

Jeffery F. Speer
Doucet & Speer
A Professional Law Corporation
P. O. Box 4303
Lafayette, LA 70502-4303
(337) 232-0405
COUNSEL FOR PLAINTIFF/APPELLANT:
    Homer Landry

**Patrick A. Johnson**
**Allen & Gooch**
**A Law Corporation**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Employers Insurance of Wausau**
    **Petroleum Helicopters, Inc.**

**GREMILLION, Judge.**

Homer Landry[1] appeals the judgment of the Workers' Compensation Judge (WCJ) which awarded him penalties capped at $8,000, but denied his claim for reimbursement of caretaker or attendant care provided by Mrs. Tena Landry, his wife, and denied his demand to accelerate his benefits. That same judgment awarded him inpatient care not subject to reduction pursuant to statutory fee schedule, other medical benefits, weekly indemnity benefits, and attorney and expert witness fees. For the reasons that follow, we affirm.

## FACTS

Mr. Landry was injured in 1997 while employed by Petroleum Helicopters, Inc. (PHI). He sustained a serious head injury that aggravated a pre-existing seizure condition. The injury also damaged his brain's frontal lobes, which seriously impaired Mr. Landry's ability to control his impulses. This resulted in Mr. Landry engaging in behaviors that, by the standards of a man in control of his faculties, would be considered, at best, highly inappropriate and even criminal. Mr. Landry's treating physicians were forced to conclude that, for his own well-being and for society's, he be institutionalized.

In an effort to obtain the appropriate services for Mr. Landry, his attorney and counsel for PHI agreed to retain the services of Dr. Cornelius Gorman, a licensed vocational rehabilitation counselor and certified life-care planner. Dr. Gorman arranged for Mr. Landry to be evaluated by the staff of NeuroRestorative Timber Ridge, a Benton, Arkansas, facility that houses and treats people with brain injuries. Mr. Landry was admitted to Timber Ridge and his course of treatment

---

[1] Mr. Landry is interdicted and his wife is his curatrix. Mr. Landry's participation in this matter is under the auspices of his wife's curatorship.

there, including environmental engineering and medication, has been successful in helping him maintain impulse control.

Dr. Gorman's life care plan estimates that the cost of Mr. Landry's future care will total approximately $14 million. That plan also values Mr. Landry's care given by his wife at $13,360,000.

Following trial on the merits, the WCJ rendered judgment in Mr. Landry's favor declaring that his treatment at Timber Ridge is necessary and reasonable and ordering PHI's insurer to pay for that treatment. That judgment also awarded Mr. Landry a $2,000 penalty for underpayment of his indemnity benefits, a $2,000 penalty for delaying Mr. Landry's admission to Timber Ridge, and $2,000 penalties for each late payment of several medical bills. All penalties were subject to the $8,000 cap on such penalties pursuant to La.R.S. 23:1201(F). The judgment denied Mrs. Landry's demand for reimbursement for attendant care she rendered Mr. Landry from the date of the accident until his admission to Timber Ridge.

Mr. Landry appeals the judgment's cap on penalties and the denial of the attendant care claim of Mrs. Landry.

## ASSIGNMENTS OF ERROR

Mr. Landry assigns the following errors:

1) The Trial Judge erred in its application of res judicata to this case.

2) The Trial Judge erred in its failure to apply the law in effect on the date of the accident.

3) The Trial Court erred in its failure to award multiple penalties and/or the Trial Court's cap of penalties at $8,000 as opposed to the award of multiple penalties which was the law applicable to this case constituted manifest error.

4) The Trial Court erred in its failure/refusal to award Tena Landry damages for attendant care.

5) The Trial Court erred in its failure to grant the Motion to Accelerate benefits due to defendant insurer's bad faith failure to fulfill it's [sic] obligations under the Judgment rendered in this case originally in the year 2000.

## ANALYSIS

Because assignments of error one through three all deal with the issue of penalties, we shall treat them in a consolidated manner.

*Penalties and res judicata*

Penalties for failing to pay workers' compensation benefits are governed by La.R.S. 23:1201. Before 2003, La.R.S. 23:1201(F) read:

> Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.

The statute was amended by 2003 La. Acts No. 1204, to provide that the maximum amount of penalties that may be imposed is $8,000. The statute was further amended to provide that "an award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed. . . .which precedes the date of the hearing." 2003 La. Acts No. 1204.

In the context of the present matter, Mr. Landry claims that the $8,000 cap should not apply to his claim, as there were acts committed by his employer or its insurer that pre-dated the 2003 amendment. Mr. Landry argues that because the law in effect at the time of the commission of these acts must govern what penalties are assessed, the cap should not apply.

PHI argues that the present Disputed Claim for Compensation was not the first Mr. Landry has filed, and that a 2007 Disputed Claim for Compensation was

3

filed that resulted in a stipulation between the parties that assessed a penalty and attorney fees. The WCJ agreed with PHI and maintained its exception of res judicata.

We, too, agree with PHI's interpretation of the issue. The stipulation at issue converted Mr. Landry's benefits from supplemental earnings benefits to temporary total disability benefits, and provided for a penalty and attorney fees. This stipulation was entered into in June 2008, after La.R.S. 23:1201 was amended. All claims for penalties and attorney fees that existed at that time were merged into that stipulation, which became a judgment of the WCJ. *See* La.R.S. 23:1272. *See also Flores v. A & Z Tobacco, LLC*, 14-505 (La.App. 3 Cir. 11/19/14), 152 So.3d 1004, *writ denied*, 15-325 (La. 4/24/15), ___ So.3d ___. From the entry of that stipulated judgment, only penalties and attorney fees that arose thereafter could be assessed.

*Attendant care benefits*

Medical reimbursement amounts (the "fee schedule") are established by regulations found in the Louisiana Administrative Code in Title 40, Part I, Chapter 35 Sections 3507–3511 (2006). Under the fee schedule, specifically La.Admin.Code 40:3509, non-professional family members must be trained by the treating health care provider. Ordinary household duties are not reimbursed, but rather must be in the nature of services trained hospital or nursing home professionals would render. Lastly, "the medical evidence or record must be sufficient to identify the nature and approximate value of the services provided." La.Admin.Code 40:3509(A)(6)(c).

4

The WCJ denied such recovery for Mrs. Landry because the types of care she provided are not the types that are authorized by the administrative code  The record provides a reasonable basis for the WCJ's ruling.

Louisiana Administrative Code 40:3509 also lists the training requirements and reimbursement guidelines applicable to skilled nursing care, and authorized services non-trained family members can provide.  In pertinent part, it states:

> 11. The following are specific activities which are not considered to be "skilled" nursing services and a person of lesser training can be utilized. This listing is not all-inclusive:
>
> a. administration of routine oral medications; eye drops; ointments;
>
> b. general maintenance care of colostomy or ileostomy;
>
> c. routine services in connection with indwelling bladder catheters (emptying and cleaning containers; clamping tubing; and refilling irrigation containers with solution);
>
> d. changes of dressings in non-infected postoperative or chronic conditions;
>
> e. prophylactic and palliative skin care; including bathing, and application of skin creams, or treatment of minor skin problems;
>
> f. general maintenance care in connection with a plaster cast;
>
> g. routine care in connection with braces and similar devices;
>
> h. administration of medical gases after the initial training of the patient in self-administration;
>
> i. general supervision of exercises which have been taught to the patient;
>
> j. assisting the patient in routine activities; dressing, eating, hygiene, etc.

Counsel for PHI questioned Mrs. Landry specifically and verbatim from this list, and Mrs. Landry denied having to perform any of those functions except occasionally providing palliative skin care, and she maintained no records of that.

Mrs. Landry counters that she was not required to document this care because PHI had already denied Mr. Landry inpatient services, which Mr. Landry claims was recommended on December 17, 2001. This assertion, though, is not borne out by the evidence.

Mr. Landry was treated by a number of physicians and specialists during the many years after his injury. In October 2001, he began treatment with Dr. James Blackburn, a psychiatrist. Dr. Blackburn treated Mr. Landry for almost ten years. Dr. Blackburn discussed the possibility of inpatient treatment, but never made a recommendation that Mr. Landry receive it. Further, Dr. Blackburn never prescribed or recommended in-home nursing services. Neither did Mr. Landry's treating neuropsychologist, Dr. Lynn Aurich, who began treating him shortly after the 1997 accident until January 2002. Dr. Blackburn discussed the possibility that an inpatient facility might be needed, but never made that recommendation.

In 2009, Dr. Shelly Savant, a psychiatrist, conducted an evaluation of Mr. Landry for the purposes of assisting Dr. Gorman in creating the life care plan. She recommended an inpatient facility for Mr. Landry, but it was established at the outset that Dr. Savant was not Mr. Landry's treating psychiatrist. Further, it was not established until after Mr. Landry was placed at Timber Ridge that his stay there would be indefinite or permanent.

Stated summarily, Mrs. Landry failed to establish the formal requirements that would entitle her to recover attendant care benefits, even if she had proven that the care she rendered qualified under the fee schedule.

*Acceleration of benefits*

Mr. Landry also appeals the WCJ's decision to not accelerate his benefits. Accelerated benefits are provided for in La.R.S. 23:1333, which reads:

A. If the employer against whom an award awarding compensation has been rendered becomes insolvent or fails to pay six successive installments as they become due, the installments not yet payable under the award shall immediately become due and eligible and the award shall become executory for the whole amount; but if the employee or his dependent is adequately protected by insurance and receives payments thereunder this right shall not accrue.

B. When the award of temporary total disability benefits is accelerated pursuant to this Section, the acceleration shall be limited to an additional six months of benefits.

This section has been consistently viewed by Louisiana courts as penal in nature; thus, it must be strictly construed. *Johnson v. Continental Ins. Cos.*, 410 So.2d 1058 (La.1982). Further, the statute applies to "unpaid judgments awarding weekly compensation, irrespective of whether the basis for the award is disability (which permits modification after six months, should the disability be diminished) or is instead a non-disabling specific injury (where the judgment provides for a fixed-number of weeks according to a schedule for specific injuries)." *Lytell v. Strickland Transp. Co.*, 373 So.2d 138, 140 (La.1979).

As a practical matter, only when, as in the present case, there is a quantification of the medical expenses, such as in a life care plan, could a court possibly accelerate medical benefits. Medical benefits are paid as the expenses are incurred, and are not "installments" under the statute; "installments," for workers' compensation purposes, is a term applied to indemnity benefits for temporary total disability, permanent total disability, permanent partial disability, death, and supplemental earnings. *See* La.R.S. 23:1201(B), (C), and (D). Accordingly, we find that the trial court did not err in denying Mr. Landry's demand to accelerate his medical benefits, because the statute is not intended to apply to those benefits.

7

**CONCLUSION**

The law that governs an award of penalties in workers' compensation cases is the law as written when the act or omission that gave rise to those penalties takes place. Because Mr. Landry had been awarded a penalty in 2007, after the penalty cap was enacted, all future penalty awards became subject to the law then in effect. The WCJ correctly applied the law in maintaining PHI's exception of res judicata. Attendant care for a spouse or other family member who renders services is specifically allowed by law; however, awards for such care must be based upon the formal requisites of the fee schedule established in the Louisiana Administrative Code. The WCJ also correctly applied the law regarding acceleration of benefits.

The judgment of the Workers' Compensation Judge is affirmed. All costs of this appeal are taxed to Appellant, Homer Landry.

**AFFIRMED.**

8