Judge Edwin A. Lombard
The Appellants, defendants Full Force Staffing, LLC ("Full Force") and its insurer, LUBA Casualty Insurance Company ("LUBA"), seek review of the December 8, 2017 judgment of the Office of *837 Workers' Compensation ("OWC") upholding a Medical Guidelines Dispute Decision, which granted a request for right shoulder surgery for the Appellee, plaintiff Lorae Burnett ("Mr. Burnett"). Finding that the decision of the OWC is not manifestly erroneous, we affirm.
Facts and Procedural History
Mr. Burnett was involved in a motor vehicle accident in New Orleans on the afternoon of August 27, 2016. He was riding as a passenger in a garbage truck owned by Metro Disposal, Inc., when it collided with another motor vehicle. Mr. Burnett asserts that he sustained various injuries in the accident, including to his right shoulder and back. At the time of the accident, he was employed by Full Force and, allegedly, by Metro Disposal, Inc. Following the accident, Mr. Burnett received medical treatment from three medical providers: Dr. John Craig Cornett; Dr. John Logan and Dr. Felix Savoie.
Dr. Cornett treated Mr. Burnett from September 2016 through January 2017. His medical records reflect that Mr. Burnett was experiencing right shoulder pain immediately after the accident. Mr. Burnett was undergoing modality therapy with moist heat, as well as performing stretching exercises for the duration of his treatment with Dr. Cornett. Additionally, Dr. Cornett's notes reflect that Mr. Burnett's symptoms were causally related to the August 2016 accident, with a reasonable degree of medical certainty, and that Mr. Burnett complained of chronic right shoulder pain. Dr. Cornett later referred Mr. Burnett to Dr. Logan, an orthopedic surgeon, who ordered an MRI.
Dr. Bernard Landry, a radiologist, reviewed the MRI of Mr. Burnett's right shoulder joint. Dr. Landry determined that Mr. Burnett had "an os acromiale[1] and degenerative subcortical pseudocyst[2] formation of the AC joint."[3] He further determined that there was "signal alteration of the superior labrum and posteroinferior labrum worrisome for tear" and recommended Mr. Burnett see an orthopedist.
Thereafter, Dr. Logan referred Mr. Burnett to an orthopedic shoulder specialist, Dr. Savoie. Dr. Savoie's note of January 16, 2017, regarding his examination of Mr. Burnett, states:
...it seems the accident caused the front of the Os to punch into the rotator cuff;[4] options for this young patient would be to fix the os with cannulated screws; I would think the need for surgery would be related to the accident he described: ...arthroscopy right shoulder with ORIF[5] os acromionale with *838 accutrak cannulated screws; will be in sling for 2-6 weeks- I really need to see the MRI to know for sure.
The Appellants maintain that Mr. Burnett filed a LWC WC Form 1008, asserting a claim for Workers' Compensation benefits in July 2017, Docket No. 17-04056. Nevertheless, this form is not a part of the record.
In August 2017, a LWC WC Form 1010 was submitted by Dr. Savoie, on Mr. Burnett's behalf, to LUBA requesting authorization for right shoulder arthroscopy with open fixation of Os Acromiale. LUBA denied the request, stating the reason as being that LUBA does not "retro precert." LUBA avers it provided this explanation because there was no indication that Dr. Savoie was Mr. Burnett's choice of physician and because there was no request for approval of evaluation or treatment of Mr. Burnett by Dr. Savoie prior to the request for surgery being made.
Thereafter, in early October 2017, Mr. Burnett filed a Disputed Claim for Medical Treatment, a LWC WC Form 1009, with the OWC Medical Director. Mr. Burnett sought review of the denial of the LWC WC Form 1010 in his Disputed Claim for Medical Treatment. He listed the issue in dispute as being Dr. Savoie's determination and recommendation that he needed right shoulder surgery. He further explained that there was "no countervailing evidence to the contrary." Lastly, he stated that LUBA denied payment for the surgery and treatment claiming that it does not "retro precert" despite the fact that the surgery had not been performed when the LWC WC Form 1010 was filed. Records from all of his treating physicians were attached to the Form 1009. The Appellants filed an opposition to the LWC WC Form 1009.
On October 18, 2017, the Medical Guidelines Dispute Decision ("MGDD") was issued by the Medical Director, specifically by Dr. Jason Picard, the Associate Medical Director of the Office of Workers' Compensation Administration Medical Services. In the MGDD, Dr. Picard opined that the requested procedure was in accordance with the OWC Medical Treatment Guidelines and covered by the medical treatment schedule upon his review of the medical records. He determined that the documentation supported "the approval of the requested services in review for compliance with the Medical Treatment Schedule." He further noted that Mr. Burnett "has a tear and failure of conservative therapy as per the guidelines."
The Appellants subsequently filed a Disputed Claim for Compensation, LWC WC Form 1008, in the OWC, seeking a reversal of the MGDD. In the LWC WC Form 1008, the Appellants described the bona-fide dispute as being an appeal of the:
... OWC Medical Dispute Decision MGD 17-2695 in favor of claimant Lorae Burnett, finding that the request for "Right shoulder arthroscopy with open fixation O's acromiate [sic]" complies with the Medical Treatment Guidelines. Appllant [sic] asserts that the Medical dispute decision, is not in compliance with the Medical Treatment Guidelines, and seeks reversal of the OWC Medical Director's decision, dated October 18, 2017.
Following a hearing in November 2017, the OWC rendered judgment upholding the MGDD and dismissing the appeal of the Appellants.
Discussion
This timely appeal followed. The sole assignment of error raised by the Appellants is that the OWC committed reversible error in finding that the Medical Director correctly determined that the "right shoulder arthroscopy with open *839 fixation Os Acromiale," requested by Dr. Savoie was in accordance with the Medical Treatment Guidelines.
The First Circuit explained the origins of the Medical Treatment Guidelines as follows:
In 2009, the legislature enacted La. R.S. 23:1203.1, which charged the Director of the Office of Workers' Compensation to establish a medical treatment schedule. See La. R.S. 23:1203.1(B). The Medical Treatment Guidelines became effective July 13, 2011, and are promulgated in the Louisiana Administrative Code, Title 40 Part 1, Subpart 2, Medical Guidelines. The statute is the product of a combined endeavor by employers, insurers, labor, and medical providers to establish meaningful guidelines for the treatment of injured workers. Church Mutual Insurance Company v. Dardar , 13-2351 (La. 5/7/14), 145 So.3d 271, 275. The statute expresses the legislature's intent that, with the establishment and enforcement thereof, all medical treatment shall be delivered in an efficient and timely manner to injured employees. La. R.S. 23:1203.1(L) ; Church , 145 So.3d at 276.
Thompson v. DHH-Office of Pub. Health , 15-1032, p. 4 (La. App. 1 Cir. 2/26/16), 191 So.3d 593, 595.
Furthermore, appellate courts apply the manifest error standard when examining a workers' compensation judge's ("WCJ's") review of a decision of the Medical Director. This is because the WCJ's review of whether there is clear and convincing evidence that the Medical Director's determination is in contravention of the medical treatment guidelines is necessarily fact-intensive. Guidry v. Am. Legion Hosp. , 14-1285, p. 4 (La. App. 3 Cir. 4/1/15), 162 So.3d 728, 730 (citing Mouton v. Lafayette Parish Sheriff's Office , 13-1411, pp. 2-3 (La. App. 3 Cir. 5/7/14), 158 So.3d 833, 835 ). Accordingly, appellate courts will not overturn the findings of the WCJ unless there is no reasonable basis to support the decision. Id. ; Poissenot v. St. Bernard Parish Sheriff's Office , 09-2793, p. 6 (La. 1/9/11), 56 So.3d 170, 174.
The Appellants assert that the WCJ committed reversible error in upholding the decision of the Medical Director considering that the WCJ was presented with clear and convincing evidence establishing that the Medical Director erred in finding that the requested surgery was in accordance with the Medical Treatment Guidelines. The Appellants further contend that the Medical Director erred in making unsupported medical findings, such as that Mr. Burnett has a tear and that there was a failure of conservative therapy. Mr. Burnett, they argue, did not undergo conservative therapy on his right shoulder prior to the request for surgery. They aver that the medical records of Dr. Savoie do not indicate that Mr. Burnett has a tear, nor that he underwent conservative therapy.
Moreover, the Appellants assert that the requested surgery is not to repair a tear, rather to place cannulated screws. The Appellants maintain that Os acromiale or surgery to address the same, is not listed in the Medical Treatment Guidelines.
In response, Mr. Burnett asserts that there was a lack of clear and convincing evidence provided by the Appellants to overturn the decision of the Medical Director because the Appellants did not provide any countervailing medical evidence to dispute Dr. Savoie's recommendation for shoulder surgery. Dr. Savoie's assessments reflect that Mr. Burnett was diagnosed as having: acute right shoulder pain; Os acromiale of right shoulder as well as a rotator cuff impingement syndrome of right shoulder. Furthermore, Mr. Burnett relies upon the conclusions reached by Dr. *840 Landry, who noted that Mr. Burnett had a "signal alteration of the superior labrum and posteroinferior labrum worrisome for tear." He further notes that he received conservative therapy for his shoulder while treating with Dr. Cornett. Mr. Burnett maintains that his medical records belie the Appellants' assertion that he did not receive the contested conservative therapy and that his condition does not require surgery.[6] We agree.
"An employer's obligation to furnish medical treatment to an injured employee is governed by La. R.S. 23:1201 et seq. La. R.S. 23:1203.1(K) establishes that the decision of the OWCA Medical Director 'may be overturned when it is shown, by clear and convincing evidence, the decision ... was not in accordance with the provisions of this Section.' " Wilson v. Broadmoor, LLC , 14-694, p. 5 (La. App. 5 Cir. 3/11/15), 169 So.3d 463, 466.
Proof by 'clear and convincing' evidence requires more than the traditional measure of persuasion, the 'preponderance of the evidence' standard, but less than 'beyond a reasonable doubt', the stringent criminal standard. Succession of Dowling , 633 So.2d 846, 855 (La. App. 4th Cir. 1994) (citing Succession of Bartie, 472 So.2d 578 (La.1985) ; Succession of Lyons , 452 So.2d 1161 (La. 1984) ). To prove a matter by "clear and convincing" evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Id. (citing Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976) ).
The WCJ explained at the November hearing that it was going to uphold the decision of the Medical Director, Dr. Picard:
This Court is not going to reverse Dr. Picard. Dr. Picard actually reviewed the records. He came up with the opinion that the right shoulder surgery to the Os acromiale is necessary, and it's medically necessary and appropriate according to the guidelines. He read the guidelines as you and I would have read the guidelines, and apparently -- he came up with the fact that this is necessary. So the Court's not going to overturn the Medical Director's decision based on that.
Based upon our review of the record, Mr. Burnett's medical records reflect that conservative therapy, i.e., modality therapy, was not alleviating his pain and, thus, was ineffective. There was a reasonable basis for the WCJ to uphold the Medical Director's determination that conservative treatment failed and surgery was justified. Moreover, the medical records of Dr. Savoie and Dr. Landry further corroborate the Medical Director's finding that a tear existed, which required operative treatment. We further note that the WCJ made it clear at the November 2017 hearing that the Medical Director may have reviewed additional medical records, which were not before the WCJ, in making his determination.
Although it is unclear from the record, as to which additional documents the Medical Director reviewed in connection with making his decision, there is sufficient evidence to support the WCJ's conclusion that the Medical Director's decision was in accordance with the workers' compensation guidelines.[7] Additionally, the Appellants *841 failed to demonstrate by clear and convincing evidence that the decision of the Medical Director should be overturned, especially considering that they presented no medical evidence to contradict Mr. Burnett's claim. Therefore, we find that this assignment of error is without merit.
DECREE
For the foregoing reasons, we affirm the December 8, 2017 judgment of the Office of Workers' Compensation, upholding a Medical Guidelines Dispute Decision that granted Lorae Burnett's request for right shoulder surgery.
AFFIRMED

The acromion is that "part of the scapula, or shoulder blade, forming the tip of the shoulder and giving it its squareness to the latter. It projects forwards from the scapula, and, with the clavicle or collar bone in front, forms a protective arch of bone over the shoulder-joint."Black's Medical Dictionary 10 (41st ed. 2006). An "o. acromiale" is "an acromion that is joined to the scapular spine by fibrous rather than by bony union." Stedman's Medical Dictionary 1384 (28th ed. 2006).

A pseudocyst is a "space within an organ without a defined lining and which contains fluid." Black's Medical Dictionary , supra , at 589-590.

The AC, or acromioclavicular, joint is a "plane synovial joint between the acromial end of the clavicle and the medial margin of the acromion." Stedman's Medical Dictionary, supra, at 1012.

The rotator cuff is "a musculo-tendinous structure that helps to stabilise the shoulder-joint." Black's Medical Dictionary, supra, at 625.

ORIF is an open reduction and internal fixation. Stedman's Medical Dictionary, supra, at 1380.

Additionally, Mr. Burnett asserts that this appeal is moot because his statutory employer, Metro Services Group, and its insurer, LWCC, approved and paid for the requested surgery; paid all back compensation, and are current on all indemnity payments. However, there is no evidence of these assertions in the record.

We note that an arthroplasty, which Dr. Savoie requested, is listed as an operative treatment option for a shoulder injury in the Louisiana Administrative Code, Title 40, Part 1, Subpart 2, Chapter 23, Subchapter B, entitled Shoulder Injury Medical Treatment Guidelines . See 40 La. Admin. Code Pt I, 2327.