STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 0727

TERRY McCAIN

VS.

LEWIS COMPANIES, INC. and LUBA CASUALTY INSURANCE COMPANY

C/W

2022 CA 0728

TERRY McCAIN

VS.

LEWIS COMPANIES, INC.

Judgment Rendered: __JUN 0 5 2023__

* * * * *

On Appeal from the
Office of Workers' Compensation, District 5
In and for the Parish of East Baton Rouge
State of Louisiana
Nos. 17-03030 c/w 21-02728

The Honorable Pamela Moses Laramore, Judge Presiding

* * * * *

| | |
|---|---|
| J. David Smith<br>Baton Rouge, Louisiana | Attorney for Appellee<br>Terry McCain |
| Richard J. Voelker<br>Stephen W. Brooks, Jr.<br>Mandeville, Louisiana | Attorneys for Appellants<br>LUBA Casualty Insurance Company and<br>Lewis Companies, Inc. |

* * * * *

BEFORE: McCLENDON, HOLDRIDGE, AND GREENE, JJ.

McClendon, J concurs And Assigns Reasons.
Greene, J. dissents and assigns reasons.

**HOLDRIDGE, J.**

The defendants, Lewis Companies, Inc. ("Lewis") and its workers' compensation insurer, LUBA Casualty Insurance Company ("LUBA"), appeal a final judgment of the Office of Workers' Compensation ("OWC") that awarded the claimant, Terry McCain, non-skilled personal care attendant services for up to ten hours a day, five days a week. For the following reasons, we affirm in part, reverse in part, and amend the judgment.

## FACTS AND PROCEDURAL HISTORY

This matter has been previously before this court and the following relevant facts and procedural history are taken from this court's earlier opinion in **McCain v. Lewis Companies, Inc.**, 2019-0416 (La. App. 1 Cir. 2/6/20), 302 So.3d 1145, 1147-56 (**McCain I**). On February 22, 2011, while in the course and scope of his employment with Lewis, Mr. McCain, who was then 58, was cutting a tree limb, when he fell from a ladder, approximately ten feet, headfirst onto a concrete sidewalk. He suffered a traumatic brain injury (subdural hematoma with subarachnoid hemorrhage in the right frontal lobe), a blowout fracture of his thoracic spine, a complete rupture of his rotator cuff, and other orthopedic injuries. The defendants paid medical and indemnity benefits (at the rate of $579.00 per week) to and on behalf of Mr. McCain. **McCain I**, 302 So.3d at 1147.

Mr. McCain filed a disputed claim for compensation using Form LWC-WC-1008 (Form 1008) on May 18, 2017, against the defendants, requesting non-skilled personal care attendant services, such as a sitter, as recommended by his treating neuropsychologist, Dr. Paul Dammers, along with other relief. **McCain I**, 302 So.3d at 1147. The defendants filed an answer and a dilatory exception raising the objection of prematurity, or in the alternative, a peremptory exception raising the

2

objections of no right and no cause of action. They contended that Mr. McCain's request for non-skilled personal care attendant services was subject to the OWC Medical Treatment Guidelines, and thus was required to be submitted to the Medical Director before the claim for compensation was filed. **McCain I**, 302 So.3d at 1148. Following a hearing, the workers' compensation judge ("WCJ") denied the defendants' exceptions in a judgment signed on February 8, 2018. **McCain I**, 302 So.3d at 1149.

The matter proceeded to trial on August 9, 2018, and on September 18, 2018, the WCJ signed a judgment which decreed that Mr. McCain was awarded permanent total disability benefits as proven by clear and convincing evidence to be the direct result of a traumatic brain injury combined with other physical injuries sustained in the work accident. The judgment further awarded Mr. McCain non-skilled personal care attendant services, for up to ten hours per day, five days per week, finding this prescribed care to be reasonable and necessary medical treatment under the Workers' Compensation Act as a result of his traumatic brain injury. The WCJ denied Mr. McCain's claim for penalties or attorney's fees, finding that the defendants' denial of non-skilled personal care attendant services was not arbitrary or capricious, and ordered each party to bear their own costs. **McCain I**, 302 So.3d at 1149.

The defendants appealed the judgment, and in their appeal raised the issue of the denial of their dilatory exception raising the objection of prematurity and of their alternative peremptory exception raising the objections of no right and no cause of action. **McCain I**, 302 So.3d at 1149-50. In its prior opinion, this court rejected Mr. McCain's contention that his request for non-skilled personal care attendant services in the form of a non-skilled sitter was not subject to the Medical Treatment Guidelines and determined that such a request must comply with the Medical

3

Treatment Guidelines. **McCain I**, 302 So.3d at 1155. This court then concluded that in order to comply with the procedures set forth in the Medical Treatment Guidelines and La. R.S. 23:1203.1, the following had to occur: Mr. McCain's treating physician was required to submit a Form LWC-WC-1010 (Form 1010) to LUBA seeking written authorization for non-skilled personal care attendant services; if LUBA denied the request, the treating physician was required to seek relief with the OWC Medical Director by filing a Form LWC-WC-1009 (Form 1009), the "Disputed Claim for Medical Treatment," within fifteen calendar days; and after the Medical Director's determination, any party disagreeing with the decision could institute a suit in the OWC by filing a Form 1008. **McCain I**, 302 So.3d at 1155. Because Mr. McCain did not comply with these procedures in trying to obtain attendant care services, this court determined that his claim for compensation was prematurely filed.[1] Accordingly, this court vacated that portion of the judgment denying the dilatory exception raising the objection of prematurity filed by the defendants, and also vacated that portion of the judgment awarding Mr. McCain non-skilled personal care attendant services for up to ten hours a day, five days a week. **McCain I**, 302 So.3d at 1155. This court affirmed that portion of the judgment finding Mr. McCain permanently and totally disabled and awarded him permanent total disability benefits retroactive to the date of trial and continuing until further order of the court. This court remanded the matter to the OWC for further proceedings consistent with the opinion. **McCain I**, 302 So.3d at 1152, 1156.

---

[1] Mr. McCain had previously filed his Form 1008 on May 18, 2017, and then Dr. Dammers thereafter filed a Form 1010, seeking authorization for the non-skilled sitter from LUBA. LUBA denied the request on July 14, 2018, pending completion of an independent medical examination of Mr. McCain. No further action was taken by Mr. McCain or Dr. Dammers regarding the request for attendant care/personal care services. **McCain I**, 302 So.3d at 1155.

4

On remand, Dr. Dammers submitted another request for authorization for a non-skilled personal care attendant for Mr. McCain to LUBA on Form 1010 on March 2, 2021. LUBA did not respond to the request, which is deemed a tacit denial of the request. On March 18, 2021, Mr. McCain and Dr. Dammers filed an appeal with the Medical Director on Form 1009. On April 6, 2021, the Medical Director denied the appeal. On May 14, 2021, Mr. McCain filed a disputed claim for compensation on Form 1008, stating that LUBA refused to authorize a non-skilled personal care attendant, to which he was entitled, and also requesting penalties and attorney's fees for its unreasonable refusal.[2]

The defendants answered the claim and attached the Medical Director's denial of Mr. McCain's request as an exhibit to their answer. On October 4, 2021, the defendants filed a motion for summary judgment, contending that Mr. McCain failed to state a cause or right of action because his claim form was improperly filed, and also that he could not prove by clear and convincing evidence that the Medical Director's decision was not in accordance with the Medical Treatment Guidelines.

Mr. McCain requested that he be allowed to file an amended petition seeking to amend his claim to attach Form 1009 showing Dr. Dammers' request for a non-skilled personal care attendant and the denial of that request. The WCJ ordered that the amended petition be filed. Mr. McCain then moved for summary judgment, seeking a judgment that he was entitled to a non-skilled personal care attendant, thereby overturning the Medical Director's denial.

---

[2] Mr. McCain's earlier disputed claim for workers' compensation was docketed as OWC Number 17-03030. Mr. McCain's later disputed claim for compensation was docketed as OWC Number 21-02728. Mr. McCain filed a motion to consolidate the two suits, which was granted by the WCJ on November 8, 2021.

The matter was tried on the motions for summary judgment.[3] On December 17, 2021, the WCJ ruled in the matter and issued reasons for judgment. On February 7, 2022, the WCJ signed a judgment denying the defendants' motion for summary judgment and granting Mr. McCain's summary judgment motion, thereby overturning the Medical Director's denial of his request for non-skilled personal care attendant services and awarding Mr. McCain those services for up to ten hours daily, five days per week. From this judgment, the defendants appeal.

## LAW AND DISCUSSION

### Summary Judgment

Appellate courts review the granting of a summary judgment *de novo* using the same criteria governing the trial court's consideration of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966(A)(3); **Duran v. Roul's Deli Juicy Juicy, L.L.C.**, 2021-1600 (La. App. 1 Cir. 8/8/22), 348 So.3d 735, 737.

The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. See La. C.C.P. art. 966(A)(2). The purpose of a motion for summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. **Hines v. Garrett**, 2004-0806 (La. 6/25/04), 876 So.2d 764, 769 (*per curiam*). After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

---

[3] We note that pursuant to the WCJ's scheduling order, all parties filed pretrial statements, although the matter was before the WCJ on cross-motions for summary judgment.

6

On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, after meeting its initial burden of showing that there are no genuine issues of material fact, the mover may point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, summary judgment shall be granted unless the adverse party can produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1).

## Workers' Compensation

In **McCain I**, this court noted that under the Louisiana Workers' Compensation Act, an employer has a statutory duty to furnish all necessary treatment caused by a work-related injury. See **McCain I**, 302 So.3d at 1153, citing La. R.S. 23:1203; **Dangerfield v. Hunt Forest Prod., Inc.**, 2010-1324 (La. App. 1 Cir. 3/25/11), 63 So.3d 214, 218, writ denied, 2011-0814 (La. 6/3/11), 63 So.3d 1019. This court determined:

> While attendant care/personal care services in the form of a non-skilled sitter may be classified as "nonmedical treatment" as listed in La. R.S. 23:1203(A),[4] such "nonmedical treatment" due "shall mean ... treatment in accordance with the medical treatment schedule" according to La. R.S. 23:1203.1(I).[5] Thus, attendant care/personal care

---

[4] Louisiana Revised Statutes 23:1203(A) provides, in pertinent part, that an employer "shall furnish all necessary . . . medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal."

[5] Louisiana Revised Statutes 23:1203.1(I) provides, in pertinent part:

> After the promulgation of the medical treatment schedule, throughout this Chapter, and notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to R.S. 23:1203 et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule.

7

services is "treatment in accordance with the medical treatment schedule," even though it may be classified as "nonmedical treatment" under La. R.S. 23:1203(A). Therefore, attendant care/personal care services is a "medical care benefit" under the Workers' Compensation Act. See La. R.S. 23:1203.1(I), and LAC 40:I.2717(A).

Furthermore, attendant care/personal care services is specifically provided for in the Medical Treatment Guidelines at LAC 40:I.3507-3511.[6] Even if attendant care/personal care services were not covered by the Medical Treatment Guidelines, La. R.S. 23:1203.1(M)(2) requires that such a request be presented to the OWC Medical Director.[7]

**McCain I**, 302 So.3d at 1155. (Footnotes added.) The decision by the Medical Director/Associate Medical Director may be overturned only when it is shown, by clear and convincing evidence, that the decision was not in accordance with the provisions of La. R.S. 23:1203.1. See La. R.S. 23:1203.1(J)(1) and (K).[8]

In its denial of the request for a non-skilled personal care attendant, the Medical Director stated that the record and documentation submitted did not support the approval of the requested services under the Medical Treatment Schedule. The Medical Director stated, "This is not allowable as per the guidelines."

---

[6] The Medical Treatment Guidelines at LAC 40:I.3507-3511 set forth the policies, procedures, and reimbursement schedule for requests for nursing, attendant care, or home health services. Under LAC 40:I.3507(A)(1), "[a]ll nursing services and personal care services described herein, except those specifically noted, must have prior written authorization of the carrier/self-insured employer before reimbursement will be made."

[7] Louisiana Revised Statutes 23:1203.1(M) provides:

(1) With regard to all treatment not covered by the medical treatment schedule promulgated in accordance with this Section, all medical care, services, and treatment shall be in accordance with Subsection D of this Section.

(2) Notwithstanding any other provision of this Chapter, all treatment not specified in the medical treatment schedule and not found in Subsection D of this Section shall be due by the employer when it is demonstrated to the medical director, in accordance with the principles of Subsection C of this Section, that a preponderance of the scientific medical evidence supports approval of the treatment that is not covered.

[8] We note that the Fourth Circuit in **Burnett v. Full Force Staffing, LLC**, 2018-0354 (La. App. 4 Cir. 10/10/18), 257 So.3d 835, 839, stated that appellate courts apply the manifest error standard when examining a WCJ's review of the Director's decision because the WCJ's review of whether there is clear and convincing evidence that the Director's determination is in contravention of the medical treatment guidelines is necessarily fact-intensive. However, we note that the matter before us was decided on motions for summary judgment, which this court reviews *de novo*. See **Savannah v. Smithy's Supply/Big 4 Trucking**, 2018-1033 (La. App. 1 Cir. 5/31/19), 280 So.3d 615, 619, writ denied, 2019-01286 (La. 10/21/19), 280 So.3d 1168.

8

In support of their motion for summary judgment seeking to uphold the Medical Director's decision, the defendants submitted the following evidence: Dr. Dammers' Form 1010 requesting authorization of medical treatment; Dr. Dammers' Form 1009 requesting relief from the Medical Director; LUBA's opposition to the claim; the Medical Director's decision; Mr. McCain's Form 1008 claim for compensation; and the defendants' answer to Mr. McCain's claim. In support of his motion for summary judgment seeking to overturn the Medical Director's decision, Mr. McCain attached the same exhibits as the defendants attached to their summary judgment motion, and he also attached Dr. Dammers' deposition. The defendants in their reply memorandum objected to Dr. Dammers' deposition because it was not submitted to the Medical Director.

In her reasons for judgment overturning the Medical Director's decision, the WCJ stated that Mr. McCain's traumatic brain injury required that he have "routine maintenance and safeguarding as found in the deposition that Dr. Dammers supplied." According to the WCJ, Dr. Dammers' deposition provided more specific information than his medical records as to Mr. McCain's need for a personal assistant and the expectations of that assistant. The WCJ noted that the Medical Director had not had the benefit of Dr. Dammers' deposition, which would have supplied him with "much more information about Mr. McCain's situation."[9]

---

[9] The WCJ did not specifically rule upon the defendants' objection to Dr. Dammers' deposition, but in considering it in her reasons for judgment, she impliedly overruled the objection. The defendants did not specifically raise this as an assignment of error on appeal, but did state in a footnote in their brief that the WCJ should have remanded the matter to the Medical Director so that he could consider the deposition. We consider the deposition of Dr. Dammers in our review. See Thompson v. DHH-Office of Public Health, 2015-1032 (La. App. 1 Cir. 2/26/16), 191 So.3d 593, 598, writ denied, 2016-00716 (La. 6/3/16), 192 So.3d 751 (This court concluded that the WCJ manifestly erred in disallowing the claimant's relevant evidence because it had not been before the medical director to render his decision, stating, "We find additional evidence may be necessary for the claimant to meet the higher burden of proof statutorily required at the appeal of the medical director's decisions, and as such, it is admissible notwithstanding that it constitutes 'new' evidence.")

The WCJ noted that the Medical Treatment Guidelines did not address Mr. McCain's situation, stating that she considered the provisions in LAC 40:1.3509-11-J under the Guidelines for Payment. She stated that LAC 40:1.3509 provides reimbursement guidelines for assisting the patient in routine activities such as dressing, eating, and hygiene, which would constitute non-skilled support. The WCJ stated that there were times Mr. McCain would not eat or did not take his medications as required when his wife was not there. In her reasons, the WCJ commented that Mr. McCain exercised poor judgment, that he had started fires and had burned up microwaves, and that he had had suicidal ideations. The WCJ stated that Mrs. McCain was gone for an eight-hour workday, so she concluded that Mr. McCain needed a sitter for ten hours daily in order that the sitter and Mr. McCain's wife could exchange information before and afterwards.

On appeal, the defendants contend that the WCJ erred in concluding that the Medical Director's decision did not comply with the Medical Treatment Guidelines and that there was clear and convincing evidence to overturn it, and in ordering a non-skilled personal care assistant for up to ten hours per day, five days per week, in violation of those Guidelines. They point out that the evidence shows that Mr. McCain can shower and dress himself; that he takes the medication his wife lays out for him; and that he drives a lawnmower to the mailbox every day. The defendants also refer to Dr. Dammers' medical records covering seven years of his treatment of Mr. McCain, during which time there was no self-injury or occurrence of any catastrophe involving Mr. McCain. The defendants contend that Mr. McCain has no medical needs requiring any level of medical care as a basis for needing a sitter and that the Medical Treatment Guidelines do not authorize a sitter simply because Mr. McCain's wife needs a "break and [to] allow her to go to work."

10

The defendants rely on **Landry v. Petroleum Helicopters, Inc.,** 2015-108 (La. App. 3 Cir. 6/3/15), 165 So.3d 1269, 1273-74, writ denied, 2015-1335 (La. 10/2/15), 178 So.3d 990, wherein the Third Circuit upheld the WCJ's denial of reimbursement for services rendered by the injured employee's wife, a non-professional family member providing care to her husband who had sustained brain injuries. The Third Circuit found that the wife was not providing the services listed in LAC 40:I.3509, which lists specific activities that are not considered to be skilled nursing services that a person of lesser training could provide. **Landry,** 165 So.3d at 1273. The defendants argue that, similarly, Mr. McCain does not require any of the services of the types listed in LAC 40:I.3509(A)(11).

Louisiana Administrative Code 40:I.3509, entitled "Training Requirements and Reimbursement Guidelines" provides that payment may be made for authorized services subject to the guidelines therein. LAC 40:I.3509(A). As to services by family and other non-professional nursing personnel, LAC 40:I.3509(A)(6) provides that these persons may receive payment in the amount of the current minimum wage if the attendant has received adequate instruction from the authorized treating provider regarding the services to be provided in the home; the services provided must be beyond the scope of normal household duties and must be in the nature of services ordinarily rendered by trained professional personnel in hospitals or nursing homes; and the medical evidence of record must be sufficient to identify the nature and approximate value of the services provided. LAC 40:I.3509(A)(11) states:

> The following are specific activities which are not considered to be "skilled" nursing services and a person of lesser training can be utilized. **This listing is not all-inclusive.**
>
> a. administration of routine oral medications; eye drops; ointments;
> b. general maintenance care of colostomy or ileostomy;
> c. routine services in connection with indwelling bladder catheters (emptying and cleaning containers; clamping tubing; and refilling irrigation containers with solution;

11

> d. changes of dressings in noninfected postoperative or chronic conditions;
>
> e. prophylactic and palliative skin care; including bathing, and application of skin creams, or treatment of minor skin problems;
>
> f. general maintenance care in connection with a plaster cast;
>
> g. routine care in connection with braces and similar devices;
>
> h. administration of medical gases after the initial training of the patient in self-administration;
>
> i. general supervision of exercise which have been taught to the patient;
>
> **j. assisting the patient in routine activities; dressing, eating, hygiene, etc.**

(Emphasis added.)

While the defendants rely on **Landry**, we note that the Third Circuit in that case did not specifically set forth the services provided to the injured employee. See **Landry**, 165 So.3d at 1273. We also note that the activities set forth for which non-skilled nursing could be provided in LAC 40:I.3509(A)(11) are not "all-inclusive." Additionally, Mr. McCain does need assistance with the administration of routine oral medications, which his wife provides, and with "routine activities; dressing, eating, hygiene, etc." LAC 40:I.3509(A)(11)(j).

While the medical records support the defendants' allegations regarding Mr. McCain's abilities to shower, dress, and take the medication that his wife dispenses, they also support the WCJ's findings. Furthermore, Dr. Dammers' Mental Residual Functional Capacity Assessment of January 1, 2018, also showed that Mr. McCain was "markedly limited" in understanding and memory, social interactions, socially appropriate behavior, and his ability to adhere to basic standards of neatness and cleanliness. He also had moderate limitations in his ability to understand even simple instructions. Moreover, the Assessment showed that he was "markedly limited" in his ability to be aware of normal hazards and take the appropriate precautions to avoid harm. Dr. Dammers' October 19, 2017 office visit notes stated that Mr. McCain "'forgets to eat'" and can do little without guidance. The Second Medical Opinion of Dr. George Jiha dated May 12, 2015, stated, "[Mr. McCain]

12

needs monitoring/sitters during waking hours as he gets lost and is a fire risk/hazard. According to the wife, he was lost and was found several times, and he had burnt 3 microwave ovens so far." Dr. Dammers' notes from Mr. McCain's visits showed complaints of vertigo, with Dr. Dammers noting on February 25, 2021, that Mr. McCain was having issues with his balance, was "prone to falls [with] orthostasis or vertigo," and had actually fallen out of his bed. Dr. Dammers also stated that a "caregiver presence [was] necessary to ensure coordination and implementation of care/treatment plan." Dr. Dammers' office visit notes from November 2015 through February 2021 showed that Mr. McCain was taking from six to eight different medications at a time, some of which were to be taken during the day, and his office notes from April 2017 stated that Mr. McCain "had very little insight/awareness re: taking medications." Dr. Dammers' office visit notes reflected his diagnoses of mood disorder due to traumatic brain injury, pain disorder associated with psychological and general medical condition, insomnia related to Axis I disorder, cognitive disorder, and late effect of traumatic injury to brain. Dr. Dammers testified in his deposition that Mr. McCain had "very limited insight and awareness as regards his behavior and his activities," such that he could not correct his behaviors. Dr. Dammers explained that the personal care assistant would "importantly, even prevent any kind of catastrophe that can happen." While Dr. Dammers admitted that during his treatment of Mr. McCain, there were no reports of catastrophic events, he stated that negative interactions had occurred, and typically Mr. McCain's wife was with him and could moderate the situations.

In reviewing *de novo* Mr. McCain's motion for summary judgment and the defendants' opposition, we agree with the WCJ's conclusion that there was clear and convincing evidence that warranted overturning the Medical Director's decision and ordering a non-skilled personal care assistant for Mr. McCain. While assistance with

13

Mr. McCain's issues due to his traumatic brain injury is not specifically listed under LAC 40:I.3509(A)(11), the listing is not exclusive, and the evidence demonstrates that a non-skilled personal care assistant was needed because Mr. McCain was a hazard to himself when unsupervised at his home due in part to his risk of falling, his failure to remember to eat, and the risk that he would cause a fire. Therefore, this part of the defendants' assignment of error has no merit.

The defendants also contend that the WCJ's award of non-skilled personal care attendant services for up to ten hours daily, five days per week, exceeds the permitted services provided for in the fee schedule of LAC 40:I.3509. The WCJ awarded Mr. McCain the services that Dr. Dammers requested in Form 1010, which was a "[n]on-skilled personal care attendant for up to 10 hours per day, five days per week." The section of the Louisiana Administrative Code concerning "Nursing/Attendant Care and Home Health Services Reimbursement Schedule, Billing Instruction and Maintenance Procedures," contains a provision entitled "Prior Authorization." LAC 40:I.3507.[10] Dr. Dammers' request for a non-skilled personal care attendant complied with LAC 40:I.3507. Louisiana Administrative

---

[10] Louisiana Administrative Code 40:I.3507 states, in pertinent part:

> A. 1. All nursing services and personal care services described herein, except those specifically noted, must have prior written authorization of the carrier/self-insured employer before reimbursement will be made. Claimants should be notified of this requirement in writing upon the initiation of the claim.
> 2. Each authorization request must include a prescription or statement of need from the treating physician of record. The information provided by the prescribing physician must include, at a minimum:
> a. in addition to the medical report and written justification required above, a description of needed nursing or other attendant services, as well as specifying the level of nursing care (R.N., L.P.N., sitter/nonprofessional); and
> b. estimated period of need, including daily/hourly requirements for each level of nursing care.

Louisiana Administrative Code 40:I.3511(A) sets forth the maximum allowable reimbursement for nursing/attendant care/home healthcare services as: the least of the provider's usual and customary fee; a pre-negotiated amount between the provider and carrier; or the maximum allowable amounts established by the schedule. The rate in the schedule for an attendant and a nonprofessional family member is minimum wage. LAC 40:I.3511(C).

Code 40:I.3509, as discussed above, sets forth the training requirements and reimbursement guidelines for nursing/attendant care and home health services. The defendants argue that Mr. McCain offered no evidence to show that the non-professional attendant he sought to assist him would meet any of the criteria of LAC 40:I.3509(A)(6) to be compensated at minimum wage. Additionally, the defendants contend that the WCJ's judgment ordering services for ten hours daily is excessive because LAC 40:I.3509(A)(5) states, in pertinent part, that "Authorized services by nonprofessional family members are reimbursable up to eight hours in any 24-hour period." While reimbursement for family members is limited to eight hours, there is no such limitation for non-family members. See LAC 40:I.3509(A)(5). Therefore, the defendants' contention that the WCJ erred in its award of ten hours of care has merit if the care is rendered by a family member, as to which reimbursement is limited to eight hours.

## CONCLUSION

We affirm that part of the February 7, 2022 judgment of the workers' compensation judge granting the motion for summary judgment filed by Terry McCain, ordering Lewis Companies, Inc. and LUBA Casualty Insurance Company to provide Mr. McCain non-skilled personal care attendant services. We reverse that part of the judgment awarding the non-skilled personal care attendant services for up to ten hours per day, without specifying whether those services are rendered by a family member or non-family member. We amend the judgment to order Lewis Companies, Inc. and LUBA Casualty Insurance Company to provide Mr. McCain non-skilled personal care attendant services for up to eight hours per day, five days per week, if rendered by a family member, and for up to ten hours per day, five days per week, if rendered by a non-family member. Costs of this appeal are assessed

15

one-half to the appellants, Lewis Companies, Inc. and LUBA Casualty Insurance Company, and one-half to the appellee, Terry McCain.

**AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART.**

16

**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2022 CA 0727**

**TERRY MCCAIN**

**VERSUS**

**LEWIS COMPANIES, INC. AND LUBA CASUALTY INSURANCE COMPANY**

CONSOLIDATED WITH

**2022 CA 0728**

**TERRY MCCAIN**

**VERSUS**

**LEWIS COMPANIES, INC.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**McClendon, J., concurring.**

Based on the specific facts presented, I concur in the result reached by the majority.



STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2022 CA 0727

TERRY McCAIN
VERSUS
LEWIS COMPANIES, INC. AND
LUBA CASUALTY INSURANCE COMPANY

consolidated with

2022 CA 0728

TERRY McCAIN
VERSUS
LEWIS COMPANIES, INC.

**GREENE, J., dissenting.**

I disagree with the majority's affirmance of the OWC judgment ordering Lewis Companies, Inc. and LUBA Casualty Insurance Company to provide non-skilled personal care assistant services to Terry McCain.

I do not think the WCJ had clear and convincing evidence to overturn the OWC Medical Director's denial of Mr. McCain's request for such services. *See* La. R.S. 23:1203.1(K). I disagree with the WCJ's finding that Dr. Dammers' July 20, 2018 deposition testimony would have provided the OWC Medical Director with "much more information about Mr. McCain's situation." From my review of Dr. Dammers' deposition testimony, it contains no new opinion or facts other than those already presented to the OWC Medical Director with Mr. McCain's Forms 1009 and 1010 and attached exhibits. Thus, I would reverse the WCJ's judgment in favor of Mr. McCain that awarded him non-skilled personal care assistant services.

Further, even if Dr. Dammers' deposition testimony *did* present clear and convincing evidence sufficient to overturn the OWC Medical Director's decision, I do not see why Mr. McCain had not already presented this supposed crucial evidence to the OWC Medical Director. When Mr. McCain filed his Form 1009 appeal with the OWC Medical Director in March of 2021, he presumably had Dr. Dammers' deposition transcript, because the deposition was taken on July 20, 2018, over two years earlier. Allowing the WCJ to consider

evidence that the OWC Medical Director *could have* considered, but which the claimant *did not provide* to the OWC Medical Director, appears to usurp the OWC Medical Director's authority to determine whether certain services are in accordance with the applicable Medical Treatment Guidelines. *See* La. R.S. 23:1203.1(J). Such is also contrary to the express legislative purpose of the Medical Treatment Guidelines, which is to ensure that medical treatment is delivered to injured employees "in an efficient and timely manner." La. R.S. 23:1203.1(L); *see, generally, Church Mutual Insurance Company v. Dardar*, 13-2351 (La. 5/7/14), 145 So.3d 271. In my opinion, allowing a claimant to present the WCJ with evidence that was available and could have been presented to the OWC Medical Director thwarts, rather than facilitates, the "efficient and timely" delivery of medical treatment to injured employees.

I acknowledge First Circuit jurisprudence indicating that a WCJ can consider "additional" evidence that the OWC Medical Director did not consider. *E.g., Deubler v. Bogalusa City Schools*, 18-0312 (La. App. 1 Cir. 9/21/18), 262 So.3d 393, 397; *Thompson v. DHH-Office of Public Health*, 15-1032 (La. App. 1 Cir. 3/21/16), 191 So.3d 593, 598, *writ denied*, 16-00716 (La. 6/3/16), 192 So.3d 751. I disagree, however, with any interpretation of this jurisprudence that would allow a WCJ to consider evidence the OWC Medical Director could have considered, but which was not presented by a party. In *Deubler*, it does not appear that any additional evidence was presented to the WCJ. In *Thompson*, it appears that only "new" evidence, not previously presented to the OWC, was introduced. *Cf., Gilliam v. Brooks Heating & Air Conditioning*, 49,161 (La. App. 2 Cir. 7/16/14), 146 So.3d 734, 744-45 (finding no error in the WCJ's consideration of a second medical opinion that existed prior to the OWC Medical Director's decision, but which was not submitted to the OWC Medical Director).

Notably, as quoted below, at least one commentator has questioned whether the workers' compensation statutory scheme is accomplishing its purpose when non-expert workers' compensation judges are "routinely" reversing the decisions of the medical expert OWC Medical Director:

> The "clear and convincing evidence" standard for reviewing the medical director's decisions on treatment requests has produced a number of disputes, most of them involving the pattern of the medical director denying the requested treatment, only to be reversed by the workers' compensation

2

judge even under a clear and convincing standard of review, followed by an affirmance by the appellate court. ... **One is entitled to wonder whether the statutory scheme, which was presumably aimed at getting expert input on whether requested medical treatment is consistent with the medical treatment guidelines, is accomplishing its purpose if those decisions are routinely reversed by "non-expert" judges even though there is a more stringent standard of review under which the reversals occur.** But perhaps the sample is skewed because only the cases of denial, reversal and then affirmance are being reported. (Emphasis added; footnotes omitted.)

*See* Johnson, III, H. Alston, 13 La. Civ. L. Treatise, *Workers' Compensation Law and Practice*

§287 (5th ed.) (2022 update).